By the Court.
This suit was instituted by the Lumber Company to recover the contract price on two separate contracts for lath sold and delivered to the Manufacturing Company. These contracts were in the form of orders accepted by the Lumber Company, the lath to be paid for sixty days after delivery, subject to discount if paid sooner. The *275 first contract was entered into February 17, 1917, and called for fifty cars of lath at $3.30 per thousand. This order contained the notation “Will wire you to ship and complete order at earliest day possible.” And the order was accepted with the notation, “Shipment subject car supply and embargoes.” And later a second contract was entered into between the parties for the shipment and delivery by the Lumber Company to the Manufacturing Company of twenty-five cars of lath at $5.10 per thousand. Prior to this second contract the Lumber Company had shipped and billed to the Manufacturing Company on the first contract eighteen carloads of lath at the stipulated price of $3.30 per thousand. This second contract was in the form of an order and acceptance, and was entered into on June 12,1917. It was signed by the Manufacturing Company and contained the notation, “Rush shipment,” and was accepted “Subject to delay on account of car shortage.” After the contract of June 12,1917, the Lumber Company shipped twelve ears of lath, invoicing the same to the Manufacturing Company at $3.30 per thousand. They also shipped seventeen cars of lath to the Manufacturing Company, invoicing the same to the latter at $5.10 per thousand. These seventeen cars were delivered to and received by the Manufacturing Company, five of which were paid for in accordance with the higher priced invoice. Subsequent to that payment the Manufacturing Company claimed the payment was made by mistake, insisting that the Lumber Company had no right to ship under the second contract until the first had been fully completed, and it attempted to apply all cars invoiced and delivered un *276 der the second contract as if in fulfillment of deliveries to he made under the first.
The Lumber Company insisted that the two contracts were separate and distinct and that deliveries could be made concurrently upon both. During the continuance of the controversy the Manufacturing Company, in the fall of 1917, requested a discontinuance of shipments until further notice on account of demoralized conditions. This was acceded to by the Lumber Company, which, about a month later, wrote that it expected settlement for the cars as invoiced, and that it expected the Manufacturing Company to give “shipping instructions for the balance of your order which will be shipped just as promptly as possible.” However, deliveries were never resumed under the contracts, although the Manufacturing Company requested that shipping be resumed. The Lumber Company brought suit for the 30 carloads of lath invoiced and delivered under the first contract, and for 17 carloads of lath invoiced and delivered under the second contract, crediting the Manufacturing Company, however, with payments for 20 carloads^ and the 5 carloads applied by the former under its claim of fulfillment of deliveries under both contracts.
The defense of the Manufacturing Company consisted in the application of the 47 carloads in fulfillment of the first contract. The defendant also asked damages by way of counterclaim, alleging that if it should be found that deliveries of the 30 cars were made under the first contract, that it demanded delivery of the 20 remaining cars, which plaintiff declined, and that defendant was compelled to purchase 20 cars of the same kind of lath in the open *277 market for more than the price named in the contract. The allegations of the cross-petition were denied hy the Lumber Company. The trial resulted in a verdict for the Lumber Company in the amount of its-claim, less the counterclaim made by the Manufacturing Company under its cross-petition. On error the judgment of the lower court was reversed by the court of appeals which held that the trial court erred in denying the motion of the plaintiff for a directed verdict in favor of the Lumber Company, and the court of appeals rendered judgment in favor of the Lumber Company for the amount claimed by it.
The controlling facts are practically conceded and undisputed, since they are substantiated by evidence consisting of written contracts and the correspondence of parties in relation thereto. In any view that could be taken of the case the court of appeals erred in rendering judgment in favor of the defendant in error. It may be conceded that the two written orders for lath constituted separate and independent contracts. If so, the question still remained for the jury to determine whether the Lumber Company in shipping its lath under the first contract had reasonably complied therewith. The first and lower-priced order was given and accepted with the stipulation that the consignee would wire the consignor “to ship and complete order at earliest day possible.” Ordinarily in separate contracts of this character, the parties stipulate that the first order shall be completed before shipping the second, or use contractual terms having that effect. It is true that the second or higher-priced order contained the notation to “rush shipment,” *278 but this does not give the. shipper authority to ignore the prior contract which required it to “complete order at the earliest day possible.” Parties are bound by their written contracts. The order of February 17,1917, to “complete order at the earliest day possible” was not complied with under the undisputed facts, for the reason that the Lumber Company actually shipped 12 cars under the earlier contract and 17 cars under the later. Had it applied the 17-car shipment to the order of February 17, 1917, it would have completed that order with the exception of three cars, and the fact that the lath were so shipped discloses that compliance could be made therewith “at the earliest day possible.”
In view of, the facts disclosed, and because of the terms employed by the parties in the two written orders, we are of the opinion that the consignee was entitled under the terms of the first order to its completion before the beginning of shipment under the second order. It is true that the consignee could waive the terms of shipment and permit a concurrent shipment upon both orders. In this case the claim is made that the Manufacturing Company did in fact make this waiver by accepting and paying for 5 cars of lath at $5.10 per thousand under invoices. made by the Lumber Company. The Manufacturing Company insists that this payment was made by mistake. As we view the record that issue should have been determined by the jury, and if they found that the Manufacturing Company had in fact waived the terms of shipment by knowingly acquiescing and ratifying the shipment of 5 cars at the higher-priced invoice, to that extent the Lumber Company would be entitled to the modification of its first order.
*279 Since this latter feature was not presented to the jury by the court in its general charge the judgment of the court of appeals reversing the judgment of the trial court will be affirmed, and its judgment in favor of the defendant in error upon the undisputed facts will be reversed and the case remanded to the trial court for further proceedings according to law.

Judgment of the court of appeals, reversmg the court of common pleas, affirmed; judgment of the court of appeals rendering judgment for defendant in error, reversed, and cause remanded.

Marshall, C. J., Johnson, Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.